### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-5238** |
| **ST TAMMANY PARISH SHERIFF'S OFFICE, ET AL.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgement filed by defendants, Rodney J. "Jack" Strain, Jr., Lieutenant David Guchereau, Deputy George R. Cummings, Deputy Daniel Sabillon, and Deputy William D. McIntyre (Doc. #15) is **GRANTED**, and plaintiff's claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Doc. #16) is **DENIED**.

## BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants, Rodney J. "Jack" Strain, Jr., Lieutenant David Guchereau, Deputy George R. Cummings, Deputy Daniel Sabillon, and Deputy William D. McIntyre.[1]  It is also before the court on plaintiff's motion for discovery under Rule 56(d) of the Federal Rules of Civil Procedure.

On August 3, 2012, plaintiff, Carl Brown, attended a protest outside the St. Tammany Parish Justice Center ("Justice Center") in Covington, Louisiana.  The gathering was organized by

---

[1] Plaintiff also named the St. Tammany Parish Sheriff's Office ("STPSO") as a defendant.  Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, the capacity to be sued, for parties other than individuals and corporations, is determined by the law of the state where the court is located.  Under Louisiana law, to have the capacity to be sued, an entity must qualify as a "juridical person", which the Louisiana Civil Code defines as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.  Louisiana law does not grant such legal status to any Parish Sheriff's Office. Valentine v. Bonneville Ins. Co., 691 So.2d 665, 668 (La. 1997).  Thus, plaintiff cannot state a claim against the STPSO, and any claim purportedly made against the STPSO is DISMISSED with prejudice.  Claims against a sheriff's office are pursued by suing the sheriff in his official capacity.  See Monell v. Dep't of Soc. Servs. of City of New York, 98 S.Ct. 2018 (1978).

Louisiana United International ("LUI") to protest conditions at the St. Tammany Parish Jail ("STPJ") in response to the United States Department of Justice's July 12, 2012, report finding that the STPJ violated the Constitution of the United States by failing to provide prisoners with humane conditions of confinement and adequate mental health care. The focus of the protest was STPJ's use of three-foot-by-three-foot cells, known as "squirrel cages," during the booking process. At that time, Brown was a student at Nicholls State University, and he was filming the protest for an academic project.

The protest began around 4:00 p.m. Shortly thereafter, personnel from the STPSO asked the rally organizers about the legality of the gathering in light of LUI's failure to obtain a permit from the City of Covington. After conferring with personnel from the City of Covington Police Department, the STPSO personnel allowed the rally to continue, but remained on the scene to monitor the event. The officers present included defendants, Guchereau, Cummings, Sabillon and McIntyre.

At approximately 4:45 p.m., Guchereau told the rally organizers that the protest needed to be terminated or moved off of Justice Center property. The protestors began to move to a parking lot across the street about 100 yards away. Brown continued filming as the protesters walked across the street. When Brown attempted to return to Justice Center property to retrieve his belongings, Guchereau confronted Brown and told him to move away from the area. Brown refused. Guchereau instructed Cummings and Sabillon to arrest Brown. Brown physically resisted the deputies efforts to arrest him, and McIntyre aided Cummings and Sabillon in forcing Brown to the ground and handcuffing him. Brown was eventually transported to the STPJ. On September 26, 2012, the District Attorney for the Twenty-Second Judicial District, Parishes of Washington and St. Tammany,

2

State of Louisiana, filed a bill of information charging Brown with resisting an officer in violation of La. Rev. Stat. § 14:108 and entry on or remaining in places or on land after being forbidden in violation of La. Rev. Stat. § 14:63.3.

On August 3, 2013, Brown filed this action bringing claims against the defendants under 42 U.S.C. § 1983.  Brown alleges that Guchereau, Cummings, Sabillon and McIntyre violated his constitutional rights by unlawfully arresting him without probable cause and using excessive force in that arrest.  He also alleges that these defendants violated his rights to free speech, assembly and freedom of the press secured by the First Amendment to the Constitution of the United States.[2] Brown alleges that Strain is liable for the violations of his constitutional rights because Strain promulgated unconstitutional policies and procedures and failed to train and supervise and wrongfully hired and retained STPO personnel.[3] Further, Brown alleges that the defendants conspired to violate his constitutional rights and that the defendants are liable under Louisiana law for false arrest, false imprisonment, assault and battery.

---

[2] Defendants moved to dismiss Brown's claims brought under the First Amendment arguing that Brown admitted at his criminal trial that he was not exercising his First Amendment rights.  Brown has not opposed the motion on this ground.  Thus, Brown's First Amendment claims are deemed abandoned and are DISMISSED with prejudice. See Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned a claim when their response to defendant's motion for summary judgment was limited to another claim).

[3] Strain moved to dismiss Brown's constitutional claims against him arguing that Brown did not properly allege any unconstitutional policies or procedures or instances of failure to train or supervise or wrongfully hire or retain STPSO personnel.  In his opposition to defendants' motion, Brown states that Strain's unconstitutional policy and procedure is using the "squirrel cages" during the booking process.  This alleged policy relates to Brown's conditions of confinement claim, not his unlawful arrest or excessive force claims.  Because Brown has not identified any policies  attributable to Strain that are related to his unlawful arrest or excessive force claims, and did not specifically oppose Strain's motion for summary judgment with respect to the unlawful arrest and excessive force claims, those claims against Strain are deemed abandoned and are DISMISSED with prejudice. See Essinger, 529 F.3d at 271.

On March 18, 2014, this court granted defendants' motion to stay pending the disposition of the criminal charges against Brown arising out of the same facts as this proceeding. On May 28, 2014, ad-hoc Judge Walter J. Rothschild, after a bench trial, found Brown guilty of both charges. On December 17, 2015, defendants moved to reopen this case stating that the criminal case had been resolved. This court granted the motion, reopening the case. On February 19, 2016, the defendants filed the instant motion for summary judgment. On February 29, 2016, Brown filed with the state district court a notice of his intention to file an application for a supervisory writ, which the state district court rejected on March 1, 2016. On March 2, 2016, Brown filed with the state district court a notice of his intent to file an application for a supervisory writ regarding the state district court's March 1, 2016, rejection of his February 29, 2016, filing. On March 7, 2016, Brown filed his application for supervisory writ in the Court of Appeal, First Circuit, State of Louisiana.

Guchereau, Cummings, Sabillon and McIntyre argue that under Heck v. Humphrey, 512 S.Ct. 477 (1994), they are entitled to summary judgment on Brown's unlawful arrest and excessive force claims because Brown was found guilty of remaining after being forbidden and resisting an officer. Alternatively, they argue that they are entitled to qualified immunity on those claims. Strain argues that Brown did not properly allege a claim regarding a constitutional violation related to the conditions of confinement. Defendants also argue that Brown's conspiracy claims should be dismissed because there are no underlying constitutional violations and no showing of a "meeting of the minds." Finally, defendants argue that Brown's state-law claims should be dismissed because the Heck principle applies to the unlawful arrest and excessive force claims, and the court should decline to exercise supplemental jurisdiction over Brown's Louisiana state-law claims under 28 U.S.C. § 1367 once all of the constitutional claims are dismissed.

4

Brown argues that summary judgment is premature because he has not had sufficient time to conduct discovery due to the stay. Brown states that he needs discovery related his unlawful arrest claim regarding whether he was attempting to retrieve his video equipment and whether he communicated this to the officers when he was arrested for remaining after being forbidden. Brown also states that he needs discovery related to his excessive force claim consisting of "eyewitness deposition testimony regarding the amount of force officers applied to" him. Brown also argues that the <u>Heck</u> principle cannot be applied because he has an application for a supervisory writ pending in the Louisiana Court of Appeal, First Circuit related to his criminal convictions. Further, Brown argues that Strain promulgated a policy of using the "squirrel cages", which he argues is an unconstitutional condition of confinement.

## ANALYSIS

### I.      Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing

5

substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II.     The Heck Principle

In Heck v. Humphrey, 114 S.Ct. 2364, 2372-73 (1994), the Supreme Court of the United States held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

The Court stated that it "den[ies] the existence of a cause of action" under § 1983 "unless and until the conviction or sentence is reversed, expunged, invaidated, or impugned . . ." and that "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim

6

has not yet arisen." Id. at 2373-74.  Further, in Edwards v. Balisok, 117 S.Ct.1584, 1587-88 (1997), the Supreme Court of the United States of America found that when a plaintiff makes allegations in a civil suit brought pursuant to § 1983 that are inconsistent with a criminal conviction, his civil suit is barred under Heck.

Brown argues that the Heck principle does not apply because he has filed an application for a supervisory writ with the Louisiana Court of Appeal, Fourth Circuit related to his criminal convictions.  The United States Court of Appeals for the Fifth Circuit has stated that, even if a direct appeal of the criminal convictions is pending, a plaintiff does not have a "cause of action for damages under 42 U.S.C. § 1983 regarding his state criminal proceedings until he can show that his conviction has been invalidated." Lewis v. Conston, 129 F.3d 611 (5th Cir. 1997). Heck "requires dismissal of claims not meeting its preconditions for suit[,]" and the "preferred order of dismissal would read: Plaintiff's claims are dismissed with prejudice to their being asserted again until the Heck conditions are met." Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

At this point, Brown's convictions have not been held invalid.  Thus, Brown's does not have any § 1983 claims against Guchereau, Cummings, Sabillon and McIntyre, regarding unlawful arrest and excessive force if Brown's prevailing on those claims would render his convictions invalid or be inconsistent with his convictions, and any such claims must be dismissed with prejudice to their being asserted again until the Heck conditions are met.

**A.  Unlawful Arrest**

Brown alleges that the officers unlawfully arrested him without probable cause on the charges of resisting an officer and remaining after being forbidden.  Brown was convicted of both of these charges.  To prevail on an unlawful arrest claim, a plaintiff must prove that he was arrested

without probable cause. <u>Daigre v. City of Waveland, Miss.</u>, 549 Fed. Appx. 283 (5th Cir. 2013) (citing <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 481 (5th Cir. 1999)).  The United States Court of Appeals for the Fifth Circuit has held that unlawful arrest claims "challenge the existence of probable cause and, thus, by their essence are collateral attacks on the criminal judgment's validity." <u>Cormier v. Lafayette City-Parish Consolidated Gov't</u>, 493 Fed. Appx. 579 (5th Cir. 2012) (citing <u>Wells v. Bonner</u>, 45 F.3d 90, 94-96 (5th Cir. 1995)). Because "[s]uch attacks run afoul of <u>Heck</u>'s 'policy of finality'", unlawful arrest claims are barred by <u>Heck</u>. <u>Id.</u> (quoting <u>Connors v. Graves</u>, 538 F.3d 373, 377-78 (5th Cir. 1995)). Therefore, Guchereau, Cummings, Sabillon and McIntyre are entitled to summary judgment as to Brown's unlawful arrest claims, and those claims are DISMISSED with prejudice to their being asserted again until the <u>Heck</u> conditions are met.

### B.  Excessive Force

Brown was convicted of resisting an officer, but alleges in this civil suit that the officers used excessive force when placing him under arrest.  The <u>Heck</u> principle bars an execessive force claim if "a successful claim of excessive force would necessarily undermine [a] conviction for resisting arrest." <u>Thomas v. La. State. Police</u>, 170 F.3d 184, 184 (5th Cir. 1999).  However, if the factual basis for plaintiff's excessive force claim is "temporally and conceptually distinct" from the facts underlying the resisting arrest conviction, the claim would not be barred by <u>Heck</u>. <u>Bush v. Strain</u>, 513 F.3d 492, 498 (5th Cir. 2008). "Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistence would not necessarily imply the invalidity of a conviction for the earlier resistence." <u>Id.</u>

Brown alleges that the officers used excessive force when placing him under arrest.  He does not allege that the excessive force occurred after he was handcuffed and his resistance stopped.

Brown's conviction for resisting arrest and claim of excessive force stem from a single incident. His excessive force claim is a collateral attack on the validity of his resisting arrest conviction, and is barred by <u>Heck.</u> Therefore, Guchereau, Cummings, Sabillon and McIntyre are entitled to summary judgment as to Brown's excessive force claims, and those claims are DISMISSED with prejudice to their being asserted again until the <u>Heck</u> conditions are met.[4]

## III.    Conspiracy

Brown alleges that the officers conspired to violate his constitutional rights.  A § 1983 conspiracy claim is a "legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983." <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995).  If the underlying constitutional claims are barred by <u>Heck</u>, so is the conspiracy claim. <u>Connors</u>, 538 F.3d at 377-78.  Because Brown's unlawful arrest and excessive force claims are barred by <u>Heck</u>, so are his conspiracy claims, and those claims are DISMISSED with prejudice to their being asserted again until the <u>Heck</u> conditions are met.

## IV.    Brown's Claim Against Strain for Unconstitutional Conditions of Confinement

Strain moved for summary judgment on Brown's conditions of confinement claim arguing that Brown did not allege that he was treated any differently than any other person processed at the jail with respect to being placed in the "squirrel cages," how long he was in the "squirrel cages," or how any condition of confinement that he experienced was a constitutional violation.  Strain

---

[4]  In his Rule 56(d) motion, Brown requested discovery related to his unlawful arrest and excessive force claims.  The discovery is unnecessary because these claims are barred by the <u>Heck</u> doctrine.  Therefore, Brown's Rule 56(d) motion is DENIED.

contends that Brown cannot support his allegation that the use of the "squirrel cages" was *per se* unconstitutional.

Brown argues that he was subjected to an unconstitutional condition of confinement by being placed in the "squirrel cage." He argues that the use of the "squirrel cages" was a policy, procedure and custom maintained by Strain although Strain was aware by virtue of the DOJ's 2012 report that the practice had constitutional deficiencies.

### A.  Official Capacity

An claim against a sheriff in his official capacity is treated as a claim against the municipality that the officer serves. Brooks v. George Cnty., Miss., 84 F.3d 157, 165 (5th Cir. 1996). In Monell v. Dep't of Soc. Servs. of City of New York, 98 S.Ct. 2018, 2037 (1978), the Supreme Court of the United States held that local governments cannot be held liable under § 1983 for constitutional deprivations effected by their individual employees in their official capacities absent a showing that the pattern of behavior alleged arose from "the execution of a government's policy or custom."  To succeed on a Monell claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010).

### 1.  Official Policy

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy. "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." Piotrowski v. City of Hous., 237 F.3d 567, 579 (5th Cir. 2001).  However, a policy may also be a custom that is ". . . a persistent, widespread practice

of, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . ." Id. (quoting Webster, 735 F.2d at 841).  Brown has satisfied the official policy prong because the 2012 DOJ report states that the STPJ had a policy of using the "squirrel cages."

### 2. Policy Maker

The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority. Webster v. City of Hous., 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*).  Presumptive policymakers for the police include the mayor, the city council and the chief of police. Id.   Brown has satisfied the policy maker prong by showing that the sheriff, Strain, by virtue of the 2012 DOJ report had knowledge of the policy of using the "squirrel cages."

### 3. Moving Force

To satisfy the "moving force" prong, the plaintiff must show culpability and causation. A municipality is culpable under § 1983 if: (1) the official policy is facially unconstitutional; or (2) if a "facially innocuous" policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Piotrowski, 237 F.3d at 579 (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 117 S.Ct. 1382, 1389-90 (1997)). Causation requires a "direct causal link between the municipal policy and the constitutional deprivation." Id. at 580. A Monell plaintiff must "establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights)" because "[w]here a court fails to adhere to the rigorous requirements of culpability and causation, municipal

11

liability collapses into respondeat superior liability." Id. (citing Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir.1998)).

Brown alleges the policy of placing arrestees in the "squirrel cages" for booking was the moving force behind a violation of his constitutional rights because the 2012 DOJ report found constitutional deficiencies with the practice.  The 2012 DOJ report concluded "that conditions of confinement at [STPJ] violated the constitutional rights of prisoners" based on STPJ's treatment of prisoners with mental illnesses.  Particularly, the report found that STPJ failed to provide adequate medical health screenings and assessments, treatment and medication for its prisoners with mental illnesses, and failed to provide adequate training regarding suicide prevention and the treatment of suicidal prisoners.  The 2012 DOJ report also stated that STPJ had a policy of placing mentally ill prisoners in the "squirrel cages" and using those cells to house suicidal prisoners.

In Dolan v. Parish of St. Tammany, 2014 WL 806462 (E.D. La. 2/28/2014) (Vance, J.), the plaintiff alleged that the STPJ subjected her minor son, J.D.D., to unconstitutional conditions of confinement by placing him in the "squirrel cages" when he was in STPJ's custody.  J.D.D. declared in his affidavit that "on several occasions [he] was removed from the rest of the general population of inmates and put into a small (3 ft. by 3 ft.) booking cage or 'squirrel cage' for a minimum of several hours each time," and that once he was confined to one "squirrel cage" with two other inmates for "several hours" which caused him to sustain serious knee injuries due to the physical restrictions. Id. at *1.  Plaintiff argued that the 2012 DOJ report put Strain on notice of the unconstitutional policy of using the "squirrel cages". Id. at *7.  The court found that plaintiff could not rely on the 2012 DOJ report to prove that STPJ's use of the "squirrel cages" was unconstitutional because that report "attacked the constitutionality of using the booking cells 'for housing prisoners

with suicide ideation,' not the constitutionality of using them for holding temporary detainees," and plaintiff did not allege that J.D.D. suffered any harm regarding failure to treat his mental illness. Id. Thus, the court concluded, "the policies of the jail concerning mentally ill prisoners – specifically, the practice of placing suicidal prisoners in booking cells – were not the 'moving force' behind the constitutional violations allegedly suffered by J.D.D." Id.

The court also analyzed whether STPJ's use of the "squirrel cages" to hold pretrial detainees is *per se* unconstitutional.  Id.  In Bell v. Wolfish, 99 S.Ct. 1861, 1872 (1979), the Supreme Court of the United States explained that the proper inquiry regarding the constitutionality of conditions of confinement for pretrial detainee is whether those conditions amount to punishment because the deprivation of liberty without due process of law is the constitutional protection that is implicated, and a pretrial "detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id.  The Court explained test for determining whether a condition amounts to improper punishment of a pretrial detainee:

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Id. at 1874 (citations omitted).

Applying these principals, the court in Dolan found that STPJ's policy of using the "squirrel cages" to house detainees while they are processed during booking is reasonably related to a legitimate penological purpose because the jail must put detainees somewhere when the first arrive

13

at the facility and are being processed. <u>Dolan</u>, 2014 WL 806462 at *8. Further, the court noted that, although the "squirrel cages" are uncomfortable, the policy of using them for booking does not unconstitutionally deprive detainees of basic human needs and plaintiff did not show that "it subjects detainees to 'genuine privations and hardship over an extended period of time.'" <u>Id.</u> at *9 (quoting <u>Bell</u>, 99 S.Ct. at 1876.

In this case, Brown was in STPJ's custody for one night. He claims that he was placed in the "squirrel cage" for booking. As in <u>Dolan</u>, the 2012 DOJ report is inapplicable because Brown does not allege that STPJ failed to treat his mental illness or that STPJ improperly placed him in the "squirrel cage" when he was suicidal. Indeed, Brown does not make any allegations regarding mental illness or suicidal ideation. Further, the court in <u>Dolan</u> properly applied the standard articulated by the Supreme Court in <u>Bell</u> and found that STPJ's use of the "squirrel cages" for booking served a penological purpose. Brown's allegations are that he was placed in the "squirrel cages" for booking, which is not *per se* a constitutional violation. Therefore, Strain is entitled to summary judgment on Brown's official capacity claim regarding the conditions of confinement, and that claim is DISMISSED with prejudice.

### B. Individual Capacity

Brown names Sheriff Strain as a defendant in his individual capacity, but makes no allegations that Strain was personally involved in his confinement. "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." <u>Oliver v. Scott</u>, 276 F.3d 736, 741 (5th Cir.2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil

rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983).  Moreover, a sheriff cannot be held vicariously liable for the actions of his deputies pursuant to 42 U.S.C. § 1983. <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir.1987); see also <u>Oliver</u>, 276 F.3d at 742 ("Section 1983 does not create supervisory or respondeat superior liability.").  Because Brown does not allege that Sheriff Strain was present at or personally involved in his confinement, Strain is entitled to summary judgment on Brown's § 1983 claim against Strain in his individual capacity, and that claim is DISMISSED with prejudice.

**VI.    Brown's State-Law Claims**

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Further, a district court may decline supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction. <u>Id.</u> at § 1367(c)(2); <u>see also</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996) ("[I]f it appears that the state issues substantially predominate . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals."). Because all of Brown's constitutional claims have been dismissed, the court declines to exercise supplemental jurisdiction over his state-law claims.  Thus, Brown's remaining state-law claims are DISMISSED without prejudice.

**CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgement filed by defendants, Rodney J. "Jack" Strain, Jr., Lieutenant David Guchereau, Deputy George R. Cummings, Deputy

15

Daniel Sabillon, and Deputy William D. McIntyre (Doc. #15) is **GRANTED**, and plaintiff's claims are **DISMISSED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Doc. #16) is **DENIED**.

New Orleans, Louisiana, this   29th   day of April, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

16